UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUDYS C. NINO : | | |
|     Plaintiff, : | | CIVIL CASE NO. |
| : | | 3:18-CV-2086(JCH) |
| v. : | | |
| : | | |
| COUNTRYWIDE HOME LOANS, : | | |
| INC., ET AL. : | | MARCH 22, 2019 |
|     Defendants. : | | |

**RULING ON MOTIONS TO DISMISS (DOC NOS. 14, 24, 32); MOTIONS TO STRIKE (DOC. NOS. 30, 38); MOTIONS FOR SANCTIONS (DOC. NOS. 31, 36); MOTIONS FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT (DOC. NOS. 40, 41); AND MOTIONS FOR PRELIMINARY INJUNCTION (DOC. NOS. 28, 39).**

**I.  INTRODUCTION**

Plaintiff, Ludys C. Nino ("Nino") brings this pro se action against defendants Countrywide Home Loans, Inc. ("CHL"); Bank of America, N.A. ("BOA"); Indy Mac;[1] Ocwen Loan Servicing, LLC ("Ocwen"); JP Morgan Chase Bank, N.A. ("JPMC"); OneWest Bank ("CIT")[2]; Mortgage Electronic Registration Systems, Inc. ("MERS"); M&T Bank Corporation ("M&T"); and various Jane and John Does.  See Complaint (Doc. No. 1) at 4–5.  Nino alleges that the defendants committed fraud, in violation of Connecticut law, and violated the Racketeer Influenced Corrupt Organizations Act (RICO), by misrepresenting the appraisal value of two properties and fraudulently inducing Nino into entering into mortgages on those properties.  See Compl. ¶¶ 113–18.

---

[1] According to the website for the Federal Deposit Insurance Corporation ("FDIC"), the FDIC completed the sale of IndyMac to OneWest Bank on March 19, 2009.  See "Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA," Federal Deposit Insurance Corporation, available at https://www.fdic.gov/bank/individual/failed/indymac.html.  The court takes judicial notice of this fact.

[2] CIT Bank noted in its filings that it was formerly known as OneWest Bank.  See Motion to Dismiss Plaintiff's Complaint (Doc. No. 24) at 1.  The court therefore refers to the defendant's current trade name, CIT.

Before the court are three Motions to Dismiss (Doc. Nos. 14, 24, 32); two Motions to Strike (Doc. Nos. 30, 38); two Motions for Sanctions (Doc. Nos. 31, 36); a Motion for Default Entry and a Motion for Default Judgment (Doc. Nos. 40, 41), and two Motions for Order to Show Cause for Preliminary Injunction and Temporary Restraining Order (Doc. Nos. 28, 39).  For the reasons stated below, the Motions to Dismiss are **GRANTED**, the Motions to Strike are **DENIED**, the Motions for Sanctions are **DENIED**, the Motion for Default Entry and Motion for Default Judgment are **DENIED**, and the Motions for Order to Show Cause for Preliminary Injunction and Temporary Restraining Order are **DENIED**.

## II.   NON-DISPOSITIVE MOTIONS

### A.   Motions to Strike

As a preliminary matter, Nino's Motions to Strike BOA's and JPMC's Motions to Dismiss (Doc. Nos. 30, 38) are barred by the Federal Rules of Civil Procedure.  BOA filed a Motion to Dismiss (Doc. No. 14) on January 22, 2019 and JPMC filed a Motion to Dismiss (Doc. No. 32) on February 22, 2019.  Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). Federal Rule of Civil Procedure 7(a), in turn, defines a "pleading" as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."  Fed. R. Civ. P. 7(a).

Motions are not pleadings, and therefore a Motion to Strike a Motion to Dismiss is improper. Compare Fed. R. Civ. P. 7(a) (defining pleadings), with Fed. R. Civ. P. 7(b) (defining motions). The Motions to Strike (Doc. Nos. 30, 38) are denied.

B. Motions for Sanctions

In her Motions for Sanctions (Doc. Nos. 31, 36), Nino moves this court to assess sanctions against the attorneys representing BOA and JPMC, on the basis of their filing BOA and JPMC's respective Motions to Dismiss. See Motion for Sanctions (Doc. No. 31) at 1; Motion for Sanctions (Doc. No. 36) at 1. Nino's arguments rely on Federal Rules of Civil Procedure 9(b) and 11(c).[3] The court discerns no basis for the imposition of sanctions, nor does it find support for Nino's claims that the Motions to Dismiss were filed for improper purposes. Rather, the court finds upon review that the Motions to Dismiss are based on nonfrivolous arguments supported by existing law. See Fed. R. Civ. P. 11(b)(2). The Motions for Sanctions (Doc. Nos. 31, 36) are therefore denied.

C. Motion for Default and Motion for Default Judgment

Nino also seeks entry of default and a default judgment against JPMC for failure to timely appear, plead, or otherwise defend the pending action. See Mot. for Entry of Default (Doc. No. 40) at 2. However, JPMC moved, on January 28, 2019, for an extension of time until March 1, 2019, to file a responsive pleading. See Motion for Extension of Time (Doc. No. 18). The court granted that Motion. See Order (Doc. No. 19). JPMC filed its Motion to Dismiss on February 22, 2019, within the time provided by

---

[3] Notwithstanding Nino's citation to the Rule, Federal Rule of Civil Procedure 9(b) is not relevant to the imposition of sanctions. Rather, it imposes a heightened pleading standard for claims of fraud. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

the extension.  See Motion to Dismiss (Doc. No. 32).  Because JPMC has timely defended the pending action, Nino's Motion for Entry of Default and Motion for Default Judgment (Doc. Nos. 40, 41) are denied.

## III.  MOTION TO DISMISS

### A.  Standard of Review

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief.  Id.  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  Id.  However, when reviewing a motion to dismiss, the court must accept the factual allegations in the operative complaint as true and draw all reasonable inferences in the non-movant's favor.  See Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012).

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in a complaint or in documents attached to a complaint as exhibits or incorporated in a complaint by reference. "Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201."  Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).  Such

matters include facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

B. Allegations

Nino alleges that Countrywide Home Loans and Indy Mac, the original lenders on her three mortgages, fraudulently misrepresented the value and the loan-to-fair-market-value ratio of three Connecticut properties she purchased between 2004 and 2007. See Compl. ¶¶ 1, 2, 4, 76–78. Nino alleges that the lenders' representations' as to the value of the properties were egregiously inflated. Id. ¶ 79. In effect, she argues that, because of the lenders' misrepresentations, she agreed to enter into mortgages in the amounts of $215,000, $236,000, and $900,000, on properties the proper value of which was $215,000, $236,000, and $385,800, respectively. See id. ¶ 77 (appraised values); id. ¶ 84 (loan amounts). Nino alleges she suffered damages in the amount of $250,000. Id. ¶ 81. She seeks treble damages and satisfaction of her mortgages. Id. ¶¶ 81, 86. Nino alleges that she suffered "actual injury" due to the defendants' misrepresentations on December 21, 2004, January 5, 2007, and March 19, 2007—the dates on which the respective promissory notes for each of three mortgages were issued—but did not learn of the misrepresentation that caused her harm until December 18, 2018. Id. ¶¶ 2, 36–37.

C. Discussion

In the Motions to Dismiss currently before the court, the defendants argue that Nino's claims should be dismissed because her claims are time-barred. See Memorandum in Support of Motion to Dismiss (Doc. No. 14-1) ("BOA Mem. in Supp.") at 8–9; Memorandum of Law in Support of Motion to Dismiss (Doc. No. 33) (JPMC Mem.

5

in Supp.") at 7–8; Memorandum of Law in Support of the Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. No. 24) ("CIT Mem. in Supp.") at 6–7.[4]  Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Deswal v. U.S. Nat. Ass'n, 603 F. App'x 22, 23–24 (2d Cir. 2015) (summary order) (quoting Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n. 12 (2d Cir. 2014)).

        1.    RICO Claim

RICO claims are subject to a four-year statute of limitations.  Koch v. Christie's Int'l PLC, 699 F.3d 141, 148 (2d Cir. 2012) (collecting cases).  The limitations period begins to run when the plaintiff "discovers or should have discovered the RICO injury." 421-A Tenants Ass'n, Inc. v. 125 Court St. LLC, No. 17-3865-CV, 2019 WL 317447, at *3 (2d Cir. Jan. 23, 2019) (summary order) (quoting In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998)).  To determine whether a plaintiff "should have discovered" a potential claim, the Second Circuit looks to whether "a reasonable [person] of ordinary intelligence would have discovered the existence of the fraud." Id. (brackets in original) (quoting Dodds v. Cigna Sec., Inc., 12 F.3d 346, 350 (2d Cir. 1993)).

Nino argues that the statute of limitations should be equitably tolled because she did not discover the defendants' misrepresentations and fraudulent statements until

---

[4] CIT filed both the Motion to Dismiss and the accompanying Memorandum of Law in Support under the same document number.  See Doc. No. 24.  For ease of reference, the court's citation refers to the page number on the filed document, not to the page number imposed by the electronic filing system.

6

December 18, 2018.  See Compl. ¶¶ 37, 54, 66.  She also argues that her claims "cannot be time barred under any Statute of Limitation Doctrine when Plaintiff did not discover those frauds until well after the purported Original Lender(s) of the fraudulent scheme fraudulently induced Plaintiff into her Mortgage Agreement at an exorbitantly inflated purchase price." Objection to Motion to Dismiss (Doc. No. 26) at 5.  Nino further argues that the statute of limitations should not apply because the ongoing foreclosure proceedings in state court were pursued via fraud on the state courts.  Id.

Nino's arguments are without merit.  The statute of limitations begins to run when she became aware or <u>should have become aware</u> of her injury.  In this case, Nino states that the actual harm—fraudulent inducement to sign three mortgage promissory notes—occurred between 2004 and 2007.  See Compl. ¶¶ 36–37.  As BOA argues in its Memorandum in Support of its Motion to Dismiss, Nino "purchased the Subject Properties and voluntarily executed the mortgages on the Subject Properties in 2004, 2006, and 2007, respectively."  BOA Mem. in Supp. (Doc. No. 14-1) at 9.  Nino could have conducted an inquiry into the assessed value of the properties she was seeking to purchase at that time, instead of relying on the assessed value provided by the lenders.  Any manipulation of the loan-to-fair-market-value ratios of each of the properties could and should have been discovered by a reasonably diligent purchaser of ordinary intelligence at the time the mortgages were executed.  That alone is a sufficient basis for dismissal.  See Koch, 699 F.3d at 153 (concluding that RICO claims were time-barred where "duty to inquire had arisen and been unmet for more than four years").

However, Nino's claims are time-barred even under a broader interpretation of the time by which she should have discovered her harm.  Nino acknowledges that she

became aware of "the Housing Bubble and its collapse," and the related mortgage crisis in the United States, between 2005 and 2011.  See Compl. ¶ 56.  She further states that she and millions of other Americans were aware of thousands of foreclosures throughout the country, which served as "storm warnings" of "the foreclosure fraud epidemic."  Id. ¶ 57.  Similarly, Nino states that "significant" warnings to the general public regarding so-called Liar Loans came in the form of testimony before the United States Congress in 2010.  See id. ¶¶ 61–62.  She further notes relevant publications in 2010 and 2011, detailing the predatory lending practices of which she now complains.  See id. ¶ 64.  Notwithstanding the availability of this information in 2010 and 2011, Nino did not conduct research on her mortgages or discover her harm until December 4, 2018, when she "secured a copy" of the publicly available county records assessment of the value of the relevant properties.  See id. ¶ 66.  Moreover, Nino was a defendant in a foreclosure action on one of the properties noted in this suit, as early as April 2010.  See BOA Mem. in Supp. at 3; see also BOA Mem. in Supp., Ex. C. (Doc. No. 14-4).[5]  Notwithstanding the long-running foreclosure action and the widely available information on the financial crisis, the related mortgage crisis, and fraudulent mortgage practices, Nino argues that she had no reasonable basis upon which to begin to investigate her mortgages prior to December 2018.  But see Koch, 699 F.3d at 153 (2d Cir. 2012) ("[O]nce there are sufficient "storm warnings" to trigger the duty to inquire, and the duty

---

[5] BOA filed a copy of the state court docket from the foreclosure proceedings, which indicates that a Complaint was filed on April 22, 2010.  BOA Mem. in Supp., Ex. C (Doc. No. 14-4) at 3.  The court takes judicial notice of the state court docket.

8

arises, if a plaintiff does not inquire within the limitations period, the claim will be time-barred.").

Even at the Motion to Dismiss stage, taking the allegations in the Complaint as true, reading the Complaint liberally, and resolving ambiguities in Nino's favor, Nino's arguments fail. Nino could and should have inquired and discovered any discrepancy between the assessed and market value of the properties, at the very latest, when she was served with a complaint instituting foreclosure proceedings on one of the mortgages she now argues was fraudulent. Running from that date, the statute of limitations barred any RICO action as of late-April 2014. Nino did not file this Complaint until December 2018. Because Nino's claims against BOA, CHL, IndyMac, M&T, JPMC, and CIT (formerly known as OneWest Bank) are time-barred, those defendants' Motions to Dismiss (Doc. Nos. 14, 24, 32) are granted. Nino's RICO claims against those defendants are dismissed.

### 2. Connecticut Fraud Claim

Nino also alleges that the defendants violated Connecticut law by fraudulently inducing her into signing the promissory notes. See Compl. ¶¶ 117–118. Fraud claims in Connecticut are subject to a three-year statute of limitations. See Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."). The Connecticut statute of limitations "precludes any construction . . . delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." Flagstar Bank, FSB v. Ticor Title Ins. Co., 660 F. Supp. 2d 346, 352 (D. Conn. 2009) (quoting Fichera v. Mine Hill Corp., 207

9

Conn. 204, 541 A.2d 472, 476 (1988)).  As the Connecticut Appellate Court has explained:

> The three year limitation period of § 52–577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury. . . . The relevant date of the act or omission complained of, as that phrase is used in § 52–577, <u>is the date when the negligent conduct of the defendant occurs and not the date when the plaintiffs first sustain damage</u>. . . . <u>Ignorance of his rights</u> on the part of the person against whom the statute has begun to run, <u>will not suspend its operation</u>."

<u>Kidder v. Read</u>, 150 Conn. App. 720, 726–27 (2014) (alterations in original) (emphasis added).  Here, the acts complained of took place between 2004 and 2007, and any claim brought in 2018 is barred by the express words of section 52-577.  Nino's fraud claims under Connecticut law, against CHL, BOA, IndyMac, JPMC, CIT, and M&T, are therefore dismissed.

## IV.    MOTIONS FOR ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER (DOC. NOS. 28, 39)

Finally, Nino moves this court, in two near-identical filings, to Order the defendants to show cause why a preliminary injunction and temporary restraining order should not issue.  <u>See</u> Motions for Order (Doc. Nos. 28, 39).  This court understands Nino to argue that the Anti Injunction Act should not bar her from seeking enjoinment of ongoing state court foreclosure proceedings.  <u>See</u>  First Motion for Order (Doc. No. 28-1) at 5; Second Motion for Order (Doc. No. 39) at 5–6.  The Anti Injunction Act, section 2283 of title 28 of the United States Code, notes that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  As the Second Circuit has noted, "[t]he

10

policy of the anti-injunction statute . . . is to prohibit enjoining of state court suits except in those situations where the real or potential conflict threatens the very authority of the federal court." <u>Vernitron Corp. v. Benjamin</u>, 440 F.2d 105, 108 (2d Cir. 1971).

Here, none of the exceptions to the Anti Injunction Act apply. Nino has pointed to no express authorization by Congress—and this court is not aware of any—authorizing this court to halt ongoing state foreclosure proceedings. Nor is an injunction in this case necessary for this court to exercise its jurisdiction. Finally, while Nino appears to argue that the third exception to the Anti Injunction Act applies here, <u>see</u> First Motion for Order (Doc. No. 28-1) at 7; Second Motion for Order (Doc. No. 39) at 7, this court has not issued a prior judgment on the issues presented in this case, such that an injunction to effectuate its judgment might be necessary. To the contrary, the state court proceedings, which Nino attacks as void and fraudulent, were initiated long before this suit. Because none of the exceptions to the Anti Injunction Act apply in this case, the court declines to issue and Order to Show Cause or to Issue a Preliminary Injunction or Temporary Restraining Order. Nino's Motions for Order to Show Cause for Preliminary Injunction and Temporary Restraining Order (Doc. Nos. 28, 39) are denied.

## V.  CONCLUSION

For the foregoing reasons, the Nino's Motions to Strike (Doc. Nos. 30, 38); Motions for Sanctions (Doc. Nos. 31, 36); Motions for Entry of Default and Default Judgment (Doc. Nos. 40, 41); and Motions to Show Cause and for Preliminary Injunction (Doc. Nos. 28, 39) are **DENIED**. The defendants' Motions to Dismiss (Doc. Nos. 14, 24, 32) are **GRANTED**. Nino's claims against CHL, BOA, IndyMac, JPMC, CIT (OneWest Bank), and M&T are dismissed with prejudice.

**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of March 2019.

                                          /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge